# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Kendrick B.,                                      Case No. 21-CV-0068 (JFD)

            Plaintiff,

v.                                                **ORDER**

Kilolo Kijakazi,

            Defendant.

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Kendrick B. seeks judicial review of a final decision by the Defendant Commissioner of Social Security denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The matter is now before the Court on Plaintiff's Motion for Summary Judgment (Dkt. No. 25) and Defendant's Motion for Summary Judgment (Dkt. No. 31). Plaintiff seeks reversal of the Defendant's final decision and either an award of benefits or a remand to the Social Security Administration ("SSA") on two grounds: (1) the Administrative Law Judge ("ALJ") erred by not assessing Plaintiff's diagnosis of benign prostatic hyperplasia ("BPH" or enlarged prostate) as severe or non-severe; and (2) the ALJ erred by failing to consider Plaintiff's professed need to elevate his feet throughout the workday due to chronic venous insufficiency. Defendant opposes Plaintiff's motion and ask the Court to affirm the final decision. For the reasons set forth below, the Court concludes that the ALJ did not err and thus denies Plaintiff's motion, grants Defendant's motion, and affirms the final decision.

1

## I.      Background

Plaintiff applied for DIB and SSI benefits on September 7, 2018, asserting that he became disabled on September 28, 2017, due to blindness or low vision, chronic hidradenitis, elevated PSA, hematuria, overactive bladder, degenerative disease of the cervical or lumbar spine, chronic low back pain, chronic venous insufficiency, and essential hypertension. (Soc. Sec. Admin. R. (hereinafter "R.") 83–84, 97–98.)[1] Plaintiff's applications were denied at the initial review and reconsideration stages.

An Administrative Law Judge ("ALJ") held a hearing at Plaintiff's request on January 17, 2020. (R. 33.) Plaintiff and vocational expert Anne Arrington testified at the hearing. (R. 34.) Plaintiff testified that he experienced frequent urination as a side effect of diabetes. (R. 48.) He further testified that his prostate was enlarged, and he sometimes had blood in his urine or felt pain in his prostate. (R. 65.) He was not receiving treatment for the prostate condition because he did not want to take the prescribed medication. (R. 66.) Plaintiff also testified that he had swelling in his legs that was worse in the morning, when he walked, and when he sat for long periods of time. (R. 58.) From time to time, he elevated his legs or lay in bed. (R. 58–59.) In response to the hypothetical question posed by the ALJ, Ms. Arrington testified that Plaintiff could not perform any of his past jobs but could do document preparation work, assembly work, or stuffing work. (R. 74.)

---

[1] The Social Security administrative record is filed at Dkt. Nos. 19 through 19-8. The record is consecutively paginated, and the Court cites to that pagination rather than docket number and page.

The ALJ issued a written decision on April 14, 2020, finding Plaintiff not disabled. (R. 12–26.) Pursuant to the five-step sequential analysis outlined in 20 C.F.R. §§ 404.1520 and 416.920, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity for a continuous 12-month period, despite working in the 4th quarter of 2018. (R. 17.) At the second step, the ALJ found that Plaintiff had severe impairments of degenerative disc disease of the lumbar spine, venous insufficiency, and diabetes. (R. 18.) The ALJ did not specifically mention BPH or an enlarged prostate condition in the step-two discussion, but the ALJ did discuss Plaintiff's complaint of frequent urination. (R. 18.) The ALJ noted that Plaintiff did not follow-up with a urologist and that the frequency of urination could be attributed to untreated diabetes. (R. 18.)

At step three, the ALJ concluded that none of Plaintiff's impairments, alone or in combination, met or medically equaled the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I. (R. 19.) Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC")[2] and determined that Plaintiff had the RFC

> to perform a range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the claimant can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently. He can sit for about 6 hours in an 8-hour workday, but would need an opportunity to stand up and/or change position at his workstation for approximately 2-3 minutes after sitting for an hour. After using that opportunity, the claimant could return again to a seated position and continue in that fashion for the remainder of the 8-hour workday. He can stand and/or walk combined for about 2 hours in an 8-hour workday. He should never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. He should have no exposure to work around

---

[2] RFC "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

extreme heat, extreme cold, humidity, vibration, and hazards, such as
unprotected heights and fast and dangerous moving machinery.

(R. 20–21.) The ALJ considered Plaintiff's testimony that swelling in his legs was worse

in the morning, when he walked, and when he sat for long periods of time. (R. 21.) The

ALJ also noted Plaintiff's diagnosis of chronic venous insufficiency, medical records

documenting a range from no edema to some edema in Plaintiff's lower extremities, and

the occasional use of compression socks. (R. 23.) To accommodate Plaintiff's venous

insufficiency, the ALJ included the limitations of standing and/or walking for two hours in

an eight-hour workday, changing positions after an hour of sitting, and a sit/stand option.

(R. 23, 24.) The ALJ also considered Plaintiff's testimony that his diabetes caused frequent

urination and medical evidence that documented increased urination due to untreated

diabetes. (R. 21, 22, 24.)

With the above RFC, the ALJ concluded, Plaintiff could not perform his past

employment as a truck driver. (R. 25.) Thus, the ALJ proceeded to step five, where the ALJ

determined that Plaintiff could make a successful adjustment to other work existing in

significant numbers in the national economy. (R. 26.) Consequently, Plaintiff was not

disabled. (R. 26.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision.

(R. 1.) This made the ALJ's decision the final decision of the Commissioner for the purpose

of judicial review.

## II.    Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence in the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or because the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB and SSI, the claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A). The disability, not

just the impairment, must have lasted or be expected to last for at least twelve months. *Titus*

*v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

## III.   Discussion

### A.   Whether the ALJ Erred by Not Assessing Plaintiff's BPH as Severe or Non-Severe at Step Two

Plaintiff reported and was assessed with an overactive bladder or increased

frequency of urination on numerous occasions. (*E.g.*, R. 345, 357, 381, 388, 431, 447, 557.)

In November 2017, nurse practitioner Alicia Hauff attributed excessive urination to

Plaintiff's endocrine system. (R. 383.) She documented Plaintiff's resistance to treatment

for his diagnosed diabetes. (R. 383.) Plaintiff was prescribed Flomax, but he never filled

the prescription. (R. 387.)

Plaintiff saw a urologist, Dr. Michael Segal, in May 2018. (R. 447.) A review of his

symptoms was positive for frequent urination. (R. 444.) Dr. Segal's assessments included

BPH with obstruction, an enlarged prostate, and bladder overactivity. (R. 441.) Dr. Segal

suspected diabetes was a contributing factor to Plaintiff's urinary symptoms. (R. 582.)

A treatment record from Ms. Hauff in December 2018 documented increased

urination due to untreated diabetes. (R. 539.) Plaintiff refused to take diabetes medication

or monitor his glucose levels. (R. 539.) Ms. Hauff noted that Plaintiff had not followed up

with Urology for a few months. (R. 543.) A review of systems documented frequent

urination, including waking two to three times a night to urinate. (R. 545.)

In the ALJ's written decision, the ALJ included diabetes as a severe impairment and

discussed Plaintiff's complaint of frequent urination at step two of the sequential

evaluation. The ALJ noted that Plaintiff had not followed up with a urologist and that frequent urination could be attributed to untreated diabetes. In this action, Plaintiff contends the ALJ erred by not mentioning "BPH" and determining whether it was severe or non-severe. (Pl.'s Mem. Supp. Summ. J. at  6, Dkt. No. 26.) Plaintiff identifies medical evidence that attributes frequent urination as a symptom of BPH rather than diabetes. (*Id.* at 8 (citing R. at 444).)

"An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "Severity is not an onerous requirement for the claimant to meet, . . . but it is also not a toothless standard." *Id.*

An ALJ's failure to consider an impairment at step two might constitute an error, unless the error was harmless. *Kurt N. v. Kijakazi*, No. 20-CV-2525 (LIB), 2022 WL 1715191, at *8 (D. Minn. Mar. 29, 2022); *Gullett v. Soc. Sec. Admin.*, No. 3:21-CV-25, 2022 WL 1749843, at *4 (D.N.D. Mar. 28, 2022; *Polly O. v. Kijakazi*, No. 20-CV-1820 (ECT/ECW), 2021 WL 6297542, at *17 (D. Minn. Dec. 16, 2021), *R. & R. adopted*, 2022 WL 62083 (D. Minn. Jan. 6, 2022); *Lorence v. Astrue*, 691 F. Supp. 2d 1008, 1028 (D. Minn. 2010). Some district courts in the Eighth Circuit have indicated that an error at step two can never be harmless, citing *Nicola v. Astrue*, 480 F.3d 885 (8th Cir. 2007). *E.g.*, *Moraine v. Soc. Sec. Admin.*, 695 F. Supp. 2d 925, 956 (D. Minn. 2010). This Court respectfully disagrees with that reading of *Nicola*. In *Nicola*, the court rejected the Commissioner's argument of harmless error because the Commissioner relied on an inapplicable case, *Howard v. Massanari*, 255 F.3d 577, 581–82 (8th Cir. 2001), for support.

*Nicola*, 480 F.3d at 887 ("The Commissioner's reliance on *Howard* is misplaced. The issue

in *Howard* was not whether the individual's diagnosis of borderline intellectual functioning

was a severe impairment; rather, the issue was whether the hypothetical question posed to

a VE adequately addressed the limitations associated with the diagnosis of borderline

intellectual functioning. Therefore, we reject the Commissioner's argument of harmless

error."). The *Nicola* court found persuasive the plaintiff's argument that the ALJ erred at

step two "in failing to find that her diagnosis of borderline intellectual functioning was a

severe impairment," a point which the Commissioner also conceded. *Id. Nicola* did not

state, however, that an error at step two can never be harmless. *See Misty G. v. Berryhill*,

18-CV-00587-KMM, 2019 WL 1318355, at *3–4 (D. Minn. Mar. 22, 2019); *Lund v.

Colvin*, No. 13-CV-113 JSM, 2014 WL 1153508, at *26–27 (D. Minn. Mar. 21, 2014).

Numerous district courts in the District of Minnesota, and other districts in the

Eighth Circuit, have held that an ALJ's failure to consider an impairment at step two is

harmless error if the ALJ considered the effects of the impairment at step two or at a later

step of the evaluation process. *E.g., Chapman v. Kijakazi*, No. 1:20-CV-125 PLC, 2022

WL 2064889, at *4, 6 (E.D. Mo. June 8, 2022); *Steel v. Kijakazi*, No. 21-CV-2105, 2022

WL 1696030, at *3 (W.D. Ark. May 26, 2022); *Gullett*, 2022 WL 1749843, at *3; *Polly

O.*, 2021 WL 6297542, at *17 ("[T]he prevailing view of courts in this District has been

that an error at step two may be harmless where the ALJ considers all of the claimant's

functional limitations as the result of impairments in the evaluation of the claimant's

RFC."), *Misty G.*, 2019 WL 1318355, at *3–4 (citing cases); *Lorence*, 691 F. Supp. 2d at

1028.

In the present case, the ALJ's failure to specifically name "BPH" or "enlarged prostrate" as a severe impairment at step two was harmless error. The ALJ considered Plaintiff's diabetes and found it to be a severe impairment. The ALJ also specifically addressed Plaintiff's frequent urination at step two, and found that the condition could be related to untreated diabetes. Evidence in the record from Ms. Hauff and Dr. Segal supports that finding. The ALJ's attribution of the symptom of frequent urination to diabetes rather than BPH had no practical effect at step two of the analysis. Whether frequent urination was caused by BPH or diabetes, the ALJ considered the increased frequency of urination at step two. The frequent urination is what could affect Plaintiff's ability to remain on task and at his workstation. What causes the frequent urination – whether BPH, untreated diabetes, or some other mechanism – has no effect on how frequently Plaintiff needs to urinate. Therefore, even assuming that it was error on the ALJ's part to assess the impairment as diabetes and not BPH, , any such error was harmless.

Moreover, contrary to Plaintiff's assertion (Pl.'s Mem. Supp. at 9), the ALJ also considered the symptom of frequent urination when assessing Plaintiff's RFC. The ALJ referred to Plaintiff's testimony that his diabetes caused frequent urination (R. 21) and summarized medical records that mentioned increased urination (R. 22, 24). The ALJ explained why she found Plaintiff's testimony about his symptoms not entirely consistent with medical evidence and other evidence of record (R. 21–23), and Plaintiff does not challenge that part of the decision. The ALJ also noted that Plaintiff was resistant to considering that increased urination might be due to untreated diabetes. (R. 22.) The ALJ's

continuation of the sequential analysis, during which she considered the symptom of frequent urination, also rendered any error at step two harmless.

> **B.      Whether the ALJ Erred in Considering Plaintiff's Claimed Need to Elevate His Feet Due to Venous Insufficiency**

Plaintiff contends the ALJ erred by not considering his claimed need to elevate his feet as part of the RFC assessment. (Pl.'s Mem. Supp. at 9.) Plaintiff relies on his testimony and a treatment record containing a recommendation from Ms. Hauff to wear compression socks and elevate his legs when seated. (*Id.* at 10 (citing R. 392).)

Plaintiff's claimed need to elevate his feet is a symptom of venous insufficiency. In evaluating the intensity, persistence, and limiting effects of a claimant's symptoms, an ALJ considers the objective medical evidence, statements from the claimant and others, and the following factors:

> 1. Daily activities;
>
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, 2016 WL 1119029, at *7 (S.S.A. Mar. 16, 2016); *see* 20 C.F.R. §§ 404.1529(c),

416.929. An ALJ need not discuss every factor, but only factors relevant to assessing the persistence, intensity, and limiting effects of a symptom. SSR 16-3p, 2016 WL 1119029, at *7.

Here, the ALJ considered whether Plaintiff's statements were consistent with objective medical evidence. (R. 22.) Specifically, the ALJ summarized medical records documenting Plaintiff's venous insufficiency, varying levels of edema, and occasional use of compression socks. (R. 23.) The ALJ took note of a treatment record from Ms. Hauff reflecting that Plaintiff was not wearing compression socks at an appointment in October 2019. (R. 23, 672.) The ALJ also found, generally, that Plaintiff's claimed symptoms were not consistent with his daily activities. (R. 24.) The ALJ pointed out that Plaintiff could do a wide range of activity, including laundry, sweeping, washing dishes, and going for walks most days. (R. 24.) "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001). As an additional relevant factor, the ALJ took account of Plaintiff's history of canceling or not attending appointments, and not following treatment plans or taking prescribed medications. (R. 22, 24.) "[A]n ALJ may properly consider the claimant's noncompliance with a treating physician's directions, . . . including failing to take prescription medications." *Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006).

Despite these factors, the ALJ still limited Plaintiff to standing and/or walking for two hours in a workday, allowed for a change in positions after an hour of sitting, and included a sit/stand option in Plaintiff's RFC, specifically in light of Plaintiff's testimony and diagnosis of venous insufficiency. (R. 23, 24.) Thus, the ALJ did not reject all

symptoms attributable to venous insufficiency. It was only Plaintiff's claimed need to elevate his legs while sitting during the workday that the ALJ found inconsistent with the objective medical evidence and other evidence of record. The ALJ gave good reasons for the evaluation of this symptom and for not including a corresponding limitation in the RFC.

To the extent Plaintiff challenges the ALJ's consideration of Ms. Hauff's notation in the "Plan" section of a treatment record that Plaintiff should wear compression socks daily and elevate his legs when seated (Pl.'s Mem. Supp. at 10 (citing R. 392)), that remark is not a medical opinion falling under 20 C.F.R. §§ 404.1520(c) or 416.920(c) because it does not describe Plaintiff's "functional abilities and limitations." *See Revisions to Rule Regarding the Evaluation of Medical Evidence*, 2016 WL 4702272, 81 Fed. Reg. 62560-01 (Sept. 9, 2016). Ms. Hauff actually did complete a Medical Opinion form and did not indicate that Plaintiff must wear compression socks daily or elevate his legs when seated. (R. 590.) Even if she had, the ALJ found the opinion not persuasive (R. 24), and Plaintiff does not challenge that finding. The Court concludes that the ALJ did not err in considering evidence from Ms. Hauff in evaluating Plaintiff's venous insufficiency and claimed need to elevate his legs.

## IV.   Conclusion

Based on all of the files, records, and proceedings herein,   **IT IS HEREBY ORDERED** that:

1.     Plaintiff's Motion for Summary Judgment (Dkt. No. 25) is **DENIED**.

2.     Defendant's Motion for Summary Judgment (Dkt. No. 31) is **GRANTED**.

3.      The decision of the Commissioner of Social Security is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date:  July 11, 2022                              *s/  John F. Docherty*
                                                 JOHN F. DOCHERTY
                                                 United States Magistrate Judge

13